Filed 3/24/25  P. v. Bolanos CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS ALFONSO BOLANOS,<br><br>    Defendant and Appellant. | F082970<br><br>(Super. Ct. No. MCR063072)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Eric L. Christoffersen, Kenneth N. Sokoler, and Ross K. Naughton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Carlos Alfonso Bolanos was 22 years old when he committed various sex crimes for which he was sentenced to serve, inter alia, multiple life in prison *without* parole and multiple life in prison *with* parole terms. These sentences were based on the One Strike

law (Pen. Code,[1] § 667.61). On an unrelated occasion, he stole a car and was convicted for its theft.

In a prior appeal, we addressed numerous contentions, primarily relating to the sentence imposed and parole eligibility. Bolanos petitioned for review in the California Supreme Court. The petition was granted and deferred pending resolution in three separate cases. After those cases were resolved, the Supreme Court transferred the matter back to this court, "with directions to vacate [our] decision and reconsider the cause in light of *In re Vaquera* (2024) 15 Cal.5th 706 [*(Vaquera)*]."

We have reconsidered the cause. We will issue substantially the same opinion, except that we apply *Vaquera* and its principles to reach the same conclusion in part **II.**, *post*. In all other respects, the prior opinion will stand.

## OVERVIEW

In sum, Bolanos makes several claims, mostly related to sentencing. Primarily, he suggests the youthful offender parole scheme—which excludes people sentenced under the One Strike law, and people sentenced to life without parole for crimes committed as adults—violates equal protection. (See § 3051, subd. (h).) The People dispute any equal protection violation.

Second, Bolanos complains the court erred in pronouncing one of the life in prison with parole terms. The People concede, but the parties diverge on the appropriate remedy. Their disagreement centers on due process and notice.

Third, Bolanos contends the trial court should have stayed some of the One Strike sentences pursuant to section 654, which generally prohibits multiple punishment for a single act. The People disagree.

We find against Bolanos on these three issues. We also address his remaining contentions—which we further detail below. Ultimately, we will reverse the car theft

---

[1] All statutory references are to the Penal Code.

conviction for insufficient evidence, direct the court to stay certain other sentences, and remand for resentencing.  The judgment, including the life without parole terms, is otherwise affirmed.

## BACKGROUND

**Charges**

The Madera County District Attorney charged Bolanos with numerous crimes and special allegations.  The following crimes were charged: forcible rape (§ 261, subd. (a)(2); Counts 1 & 2), forcible oral copulation of a minor (§ 287, subd. (c)(2)(C); Count 3), aggravated kidnapping (§ 209, subd. (b)(1); count 4), forcible oral copulation (§ 287, subd. (c)(2)(A); Count 5), criminal threats (§ 422, subd. (a); Count 6), false imprisonment (§ 236; Count 7), vehicle theft (Veh. Code, § 10851, subd. (a); Count 8), and grand theft automobile (§ 484/487, subd. (d)(1); Count 9).  The charges included the following special allegations: aggravated kidnapping in Counts 1, 2, and 3 (§ 667.61, subds. (*l*) & (d)(2)), aggravated kidnapping in Counts 1, 2, and 3 (§ 667.61, subds. (a) & (d)(2)), kidnapping in Counts 1, 2, and 3 (§ 667.61, subds. (a) & (e)(1)), kidnapping in Count 5 (§ 667.61, subds. (b) & (e)(1)),[2] and multiple victims (§ 667.61, subds. (a) & (e)(4)).

**Trial Evidence**

There are three victims in this case.  We will summarize the evidence relative to each victim in the order presented at trial.  In each incident, Bolanos used his "girlfriend" or a fake Facebook[3] profile to contact the victim.  The fake profile was named "Maritza Martinez" and depicted a "Mexican" "teenage girl …."[4]

---

[2] The basis for this special allegation is subject to some debate and discussed further below.

[3] Facebook is a "social media service provider[] …." (*Facebook, Inc. v. Superior Court* (2018) 4 Cal.5th 1245, 1248.)

[4] Victim one provided the Maritza Martinez description at the trial.

3.

<u>Victim One: Counts 1 through 4 (forcible rape, forcible oral copulation, kidnapping)</u>

Victim one agreed to meet Maritza Martinez for a job. At the last minute, victim one was told Bolanos would meet her instead and he indeed showed up in a van. Victim one entered, believing she would help sell fruit. Bolanos drove her down the street and then forced her to perform oral sex. He then drove her to a second location, raped her, took her back to the first location, and then raped her again. To accomplish the acts, Bolanos verbally threatened the victim with a weapon.[5]

<u>Victim Two: Counts 5 through 7 (forcible oral copulation, criminal threats, false imprisonment)</u>

Victim two agreed to meet her friend at the friend's home, a trailer.[6] Her friend was in a relationship with Bolanos. When victim two arrived at the trailer, she hesitated to enter and remained outside until Bolanos approached and "told [her] go in" because her friend "was in there." After she complied by entering, Bolanos told her her friend was not home. Victim two tried to leave but Bolanos blocked the door, held a knife to her "stomach," threatened to "stab her," and forced her to perform oral sex.

<u>Victim Three: Counts 8 and 9 (vehicle theft, grand theft automobile)</u>

Victim three agreed to sell her car to Maritza Martinez. At the last minute, victim three was told Bolanos would meet her instead. Bolanos showed up, test drove the car, and then victim three signed over the "pink slip …." After signing over the "pink slip," Bolanos handed victim three fake money concealed in an envelope. Victim three exited the car, ultimately realized the money was fake, and Bolanos drove off the with car.

---

[5] Bolanos did not display a weapon during the threats.

[6] Victim two and her friend—Bolanos's girlfriend—communicated through Facebook. Bolanos "kicked" his girlfriend "out" after she invited victim two to visit. The girlfriend testified she invited her friend over at Bolanos's request and complied "[b]ecause he was going to hit [her] if [she] didn't [do] it." She also helped him use the Maritza Martinez profile to arrange the meeting with victim three.

**Verdict and Sentence**

The jury found Bolanos guilty on each charged crime. The jury found the aggravated kidnapping special allegations to Count 1 not true (§ 667.61, subds. (*l*) & (d)(2) and (a) & (d)(2)). It also found the kidnapping special allegation to Count 5 not true (§ 667.61, subd. (b) & (e)(1)). The remaining special allegations were found true.

The court sentenced Bolanos to serve life without parole on Counts 2 and 3, 25 years to life on Counts 1 and 5, seven years to life on Count 4,[7] and four years, four months on Counts 6 through 9. Only the Count 9 term was stayed.

## DISCUSSION

This appeal presents numerous issues. We address the issues in the following order.

First, is Bolanos eligible for youthful offender parole (§ 3051)? Two, did the court properly impose a 25-year-to-life sentence on Count 5? Three, should the court have stayed two of the terms imposed on Counts 1, 2, and 3? Four, did the court fail to stay the seven-year-to-life sentence on Count 4? Five, did the evidence insufficiently prove vehicle theft (Count 8)? Six, did the court err in its grand-theft-automobile jury instructions (Count 9)? Seven, should the court have stayed two of the terms imposed for Counts 5, 6, and 7?

The People concede several issues. The People agree the court wrongly imposed a 25-year-to-life sentence on Count 5 but dispute the remedy, agree the court failed to stay the sentence on Count 4, agree the evidence failed to prove vehicle theft (Count 8), agree the court's grand-theft-automobile instructions were erroneous but disclaim prejudice, and assert the court should have stayed the sentence on Counts 6 and 7.

The People disagree the youthful offender parole scheme violates equal protection. They also believe the court appropriately sentenced Bolanos on Counts 1, 2, and 3.

---

[7] See section 3046, subdivision (a)(1).

5.

We find the youthful offender parole scheme does not, on its face, violate equal protection. We agree with the parties the court erred in pronouncing a 25-year-to-life sentence on Count 5 but hold the remedy is to impose a 15-year-to-life sentence. Finally, we also agree the court failed to stay the sentence on Counts 4, 6, and 7, the evidence was insufficient to prove vehicle theft, and the court's grand-theft-automobile jury instructions were erroneous but harmless. We will remand the case with directions to enter an acquittal on Count 8 and otherwise resentence Bolanos consistent with this opinion.

## I. The Youthful Offender Parole Scheme Does Not Violate Equal Protection

As pertinent, "[a] youth offender parole hearing is a hearing by the Board of Parole Hearings for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger … at the time of the controlling offense." (§ 3051, subd. (a)(1).) Youthful offender parole does not apply, however, "to cases in which sentencing occurs pursuant to … [s]ection 667.61, or to cases in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." (§ 3051, subd. (h).) Both exclusions apply in this case.

Bolanos claims "[e]qual protection principals [*sic*] require the provisions of section 3051 be extended to him." "[T]he requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288 (*Chatman*).)

"Where, as here, a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) Bolanos suggests "[n]o rational basis supports exclusion of first-time youthful offenders convicted of LWOP under the One Strike law when youthful offenders convicted of murder are eligible." He does not otherwise address the LWOP-as-an-adult exclusion.

6.

The People do not agree Bolanos's exclusion from youthful offender parole violates equal protection. They instead contend "there could be a rational basis for the disparate treatment." The People focus on the One Strike exclusion and do not address the LWOP exclusion.

The California Supreme Court resolved these claims after the parties submitted their briefs. Bolanos is not entitled to relief and is ineligible for parole under both exclusions. (*People v. Williams* (2024) 17 Cal.5th 99, 136-137 [youthful parole exclusion for "One Strike offenders" does not violate equal protection]; *People v. Hardin* (2024) 15 Cal.5th 834, 839 [LWOP exclusion from youthful parole does not violate equal protection on its face].)[8]

## II. A One Strike Sentence On Count 5 Is Authorized

Depending on the circumstances pled and proven, the One Strike law mandates imprisonment for 15 years to life, 25 years to life, or LWOP. (§ 667.61, subds. (a), (b), (j), (*l*), and (m).) At issue in this case are section 667.61, subdivisions (a) and (b).

Section 667.61, subdivision (a) states: "Except as provided in subdivision (j), (*l*), or (m), a person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 25 years to life." Section 667.61, subdivision (b) states: "Except as provided in subdivision (a), (j), (*l*), or (m), a person who is convicted of an offense specified in

---

[8] Bolanos did not raise equal protection in the trial court, nor did he attempt to raise an as-applied argument in this court. We accordingly do not address or foreclose an as-applied challenge.

"An as applied challenge … seek[s] relief from a specific application of a facially valid statute …." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 (*Tobe*).) "When a criminal defendant claims that a facially valid statute … has been applied in a constitutionally impermissible manner to the defendant, the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction." (*Ibid.*)

subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life." The difference between the two subdivisions is the quantity and quality of circumstances proven.

Here, relative to Count 5, the People charged two special allegations. The first special allegation, reproduced in full below, charged a kidnapping circumstance pursuant to section 667.61, subdivision (e)(1) and referenced both subdivisions (a) and (b). The second special allegation, reproduced in full below, charged a multiple victim circumstance pursuant to section 667.61, subdivision (e)(4) and referenced only subdivision (a).

Because the jury found true only the multiple victim circumstance, a 25-year-to-life sentence under section 667.61, subdivision (a) is unauthorized because that subdivision requires *two* proven subdivision (e) circumstances.[9] The trial court erred in pronouncing a 25-year-to-life sentence. The question is: what is the remedy?

The People claim the trial court should pronounce sentence pursuant to section 667.61, *subdivision (b)*. Bolanos asserts no One Strike sentence is permitted because the only circumstance found true referenced *subdivision (a)*, which requires *two* proven circumstances. Based on the record in this case, we agree with The People.

**A. Additional Background**

The Count 5 special allegations—as charged by the People and reproduced in full—follow:

> "SPECIAL ALLEGATION 1
> PC667.61(b)/(c)/(e)(1): Aggravating Circumstances
>
> IT IS FURTHER ALLEGED As to Count 5 within the
> meaning of State of California Penal Code
> Sections 667.61(a), (c)(7) and (e)(1), as to CARLOS
> ALFONSO BOLANOS, that the following circumstances

---

[9] For clarity, only one section 667.61, subdivision (d) circumstance is necessary to prove to invoke the One Strike law. But that subdivision is not at issue here.

apply: the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5

SPECIAL ALLEGATION 2
PENAL CODE SECTION 667.61(a)/(c)/(e)(4):
Aggravating Circumstances

IT IS FURTHER ALLEGED, as to Counts 1 through 3 and Count 5, within the meaning of State of California Penal Code Sections 667.61(a), (c)(1), (c)(7) and (e)(4), as to CARLOS ALFONSO BOLANOS, that the following circumstances apply: the defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim."

As noted, the jury found Special Allegation 2 true, and Special Allegation 1 not true.

Prior to trial, counsel for Bolanos filed a motion to dismiss. !(CT 84)! Counsel listed the charges and allegations in the motion, explicitly acknowledging Bolanos faced "15 Years to Life" under Count 5 due to the "667.61(e)(4)" allegation. !(CT 86-87)!

Minute orders throughout the case indicate the parties attempted to negotiate a plea. According to these orders, the People "offer[ed] 50 to Life," and Bolanos "counter[ed]" with "35 to life." !(CT 72)! After the People rejected the counter offer !(CT 97)!, a jury trial was "confirmed," !(CT 97)! and it began approximately one month later. !(CT 98, 112)! The record indicates no other settlement discussion.

**B. Analysis**

"A defendant has a due process right to fair notice of any sentencing allegation that, if proven, will increase the punishment for a crime. [Citations.] In the sentencing enhancement context, the touchstone of fair notice is whether the accusatory pleading enables the defense to predict the sentence the defendant faces if convicted. To enable a defendant to make this prediction, an accusatory pleading must provide the defendant with fair notice of the factual basis on which the prosecution is seeking an increased punishment and of 'the potential sentence.' " (*Vaquera, supra,* 15 Cal.5th at p. 717.) "[A]n accusatory pleading that fails to inform the defendant that the prosecution is

9.

pursuing a particular sentencing enhancement in connection with a specific count does not allow the defendant to predict the potential sentence[.]" (*Id.* at pp. 717-718.)

"[T]o satisfy due process, an accusatory pleading must inform the defendant that the prosecution is relying on specific facts to support imposition of a particular One Strike sentence." (*Vaquera, supra,* 15 Cal.5th at p. 719.) "[D]ue process does not require 'rigid code pleading or the incantation of magic words.' [Citation.] An accusatory pleading need not specify the number of the pertinent sentencing statute, so long as it otherwise clearly notifies the accused of the factual basis on which it is seeking a longer sentence and the information necessary to calculate sentencing exposure." (*Id.* at pp. 719-720.)

"If a One Strike allegation describes the specific factual circumstance based on which the prosecution seeks One Strike sentencing and cites to section 667.61, the allegation does not necessarily need to specify the sentence (i.e., '15 years to life,' '25 years to life,' or 'life without the possibility of parole') or cite to the specific subdivision of section 667.61 that provides the applicable enhanced penalty." (*Vaquera, supra,* 15 Cal.5th at p. 720.) "Similarly, a One Strike allegation need not specify the factual basis of the sentence the prosecution is seeking if the allegation's text otherwise makes clear that the prosecution intends to rely on the facts alleged in connection with the underlying count to seek imposition of a specific One Strike sentence on that count. To satisfy due process, it is sufficient for an accusatory pleading to provide the defendant fair notice of the particular One Strike sentence the prosecution is seeking and of which facts it intends to prove to support that sentence." (*Ibid.*)

Based on the above principles we recognize the pleading is not perfect. We nonetheless find it adequate and fair. The singular defect is that the pleading combines section 667.61, subdivision (a) and (e) with only one circumstance. A section 667.61, subdivision (a) sentence only applies if "one or more of the circumstances specified in

subdivision (d) or … *two or more of the circumstances specified in subdivision (e)*" is, or are, proven. (Emphasis added.)

At bottom, specific to Count 5, the information invoked the One Strike law, a 25-year-to-life sentence, a 15-year-to-life sentence, a kidnapping circumstance, and a multiple victim circumstance. A multiple victim circumstance combined with Count 5, i.e., forcible oral copulation, carries a 15-year-to-life sentence under section 667.61, subdivision (b). These pleading-facts sufficiently apprised Bolanos of a potential One Strike sentence.

To find otherwise, we would need to conclude the People exercised discretion to charge a legal impossibility—a One Strike sentence invoking one 667.61, subdivision (e) circumstance under subdivision (a). Such a conclusion defies logic. It is true "a prosecutor has the discretion to charge any provision of the One Strike law supported by the facts or, indeed, to elect not to invoke the One Strike law at all; nothing requires the prosecutor to charge the One Strike provision that carries the longest sentence." (*Vaquera, supra,* 15 Cal.5th at p. 724.) The pleading in this case, however, clearly alleged the One Strike law and all applicable factual circumstances. No reasonable reading leads to a conclusion the prosecutor intentionally charged a legal impossibility, especially where the information otherwise sought LWOP terms on other counts.

The best evidence for our conclusion is the fact Bolanos's counsel actually understood the Count 5 multiple victim circumstance carried a 15-year-to-life sentence. !(CT 86-87)! We need not analyze any further.

We conclude our analysis by noting the California Supreme Court in *Vaquera* acknowledged the possibility a pleading error is "subject to a prejudice analysis[.]" (*Vaquera, supra,* 15 Cal.5th at p. 726.) There, the Court repeatedly emphasized "the purpose of a statutory pleading requirement is 'to give sufficient notice to permit the defense to make informed decisions about the case, including whether to plead guilty, how to allocate investigatory resources, and what strategy to deploy at trial.' " (*Ibid.*)

11.

Bolanos makes no attempt to demonstrate prejudice, nor could he. The People offered to settle the case, Bolanos impliedly rejected the offer, made a counteroffer, and then swiftly proceeded to trial when the People rejected the counteroffer. There is no reason to believe the information—relative to Count 5—impacted any strategic decision in the case. More importantly, Bolanos faced LWOP sentences on other counts. It makes no sense to believe Bolanos forwent resolving or defending against the LWOP charges and instead would have chosen to resolve his case or defend against it differently had Count 5—a parole *eligible* charge—been pleaded in a clearer manner. In other words, there is no conceivable rationale Bolanos's strategy was impacted by the Count 5 pleading language.

In sum, the One Strike law and all circumstances at issue in this case were pled. Bolanos had the opportunity to defend against the factual allegations. He faced LWOP sentences on other counts. The People rejected his counteroffer to settle the case. His attorney knew the Count 5 charge and multiple victim circumstance carried a 15-year-to-life sentence. There is no conceivable error or prejudice on this record. On remand, the trial court shall impose a 15-year-to-life sentence on Count 5 pursuant to section 667.61, subdivision (b).

**III. The Sentences On Counts 1 Through 3 Are Proper**

The court pronounced consecutive One-Strike-law sentences for each sex-crime conviction committed against victim one, as charged in Counts 1, 2, and 3. Bolanos contends, because each sentence was "based on the same act of kidnapping" and "[s]ection 654 prohibits multiple punishment for the same act," the court could apply "the One Strike law only to one count."

The People argue, because "section 654 does not preclude multiple punishment for the substantive crimes," it "does not preclude punishment for attached enhancements …." We hold the sentences at issue here do not violate section 654.

12.

As relevant, section 654 states "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Section 654 "ensure[s] that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341 (*Correa*).) It "does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification." (*People v. Harrison* (1989) 48 Cal.3d 321, 325.) " 'A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective.' " (*Correa, supra,* at p. 341.) These principles are controlling.

" '[T]he One Strike law is an alternative sentencing scheme ….' " (*People v. Carbajal* (2013) 56 Cal.4th 521, 534.) " '[I]t applies only to certain felony sex offenses.' " (*Ibid.*)

In this case, Bolanos committed three discrete One Strike crimes while substantially moving the victim between each crime,[10] impliedly ignoring multiple

---

[10] For this reason, it does not matter—as Bolanos argues—kidnapping is a continuous crime. (See *People v. Burney* (2009) 47 Cal.4th 203, 233.) Here, Bolanos committed *three distinct* One Strike crimes against victim one.

To suggest an exception for One Strike crimes based on a kidnapping circumstance would permit a single prison term for a person who succeeds in kidnapping and secreting a victim for a lengthy time period, while otherwise committing innumerable sex crimes. Such an interpretation would reward the most culpable individuals and we reject it because the One Strike law's purpose is "to increase the penalties imposed on defendants who commit certain sexual offenses under specified circumstances." (*People v. Betts* (2020) 55 Cal.App.5th 294, 299; cf. *People v. Jackson* (2016) 1 Cal.5th 269, 354-355 [prior law permitted " 'a *single* … sentence … for a sequence of sexual assaults by [a] defendant against one victim that occurred during an uninterrupted time frame and in a single occasion.' "].)

opportunities to abandon his criminal endeavor.[11]  There is no reason to believe section 654 should apply in this circumstance, and we find it does not.

In any event, section 667.61, subdivision (h) states "[n]otwithstanding any other law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, a person who is subject to punishment under" the One Strike law.  The First District Court of Appeal recently held this subdivision means section 654 does not apply to the One Strike law.  (*People v. Caparaz* (2022) 80 Cal.App.5th 669, 688-690 (*Caparaz*).)  We agree. The Count 1, 2, and 3 sentences will remain.

## IV. The Trial Court Must Stay the Sentence On Count 4

The jury found Bolanos guilty of kidnapping (§ 209, subd. (b)) as charged in Count 4.  The jury used the same act—kidnapping—to find true the One Strike allegations charged in Counts 1, 2, and 3.

The court imposed a consecutive sentence for Count 4.  Bolanos contends the sentence is prohibited by law.  The People agree.  The parties are correct.

As relevant, section 667.61 states:

> "If only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a), (b), (j), (*l*), or (m) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a), (b), (j), (*l*), or (m) whichever is greater, rather than being used to impose the punishment authorized under any other law …."  (§ 667.61, subd. (f).)

---

**11** Section 667.61, subdivision (i) mandates consecutive sentences for "crimes involv[ing] … the same victim on separate occasions …."  A separate occasion is defined by reference to section 667.6, subdivision (d), which in part requires "consider[ation of] whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior."  Bolanos certainly had opportunities to reflect.

14.

Likewise, section 209, subdivision (d) states "a person may not be punished under [section 209,] subdivision (b) and [s]ection 667.61 for the same act that constitutes a violation of both subdivision (b) and [s]ection 667.61."

There is neither dispute nor doubt the trial court's sentence violated these sections. On remand, when the court again pronounces judgment, it must stay the sentence on Count 4.

**V. The Evidence Failed To Prove Vehicle Theft (Count 8)**

The jury convicted Bolanos for violating Vehicle Code section 10851, subdivision (a). As pertinent, to prove the violation, the People had to prove Bolanos took the car "without the consent of the owner …." (Veh. Code, § 10851, subd. (a); *People v. Bullard* (2020) 9 Cal.5th 94, 102.) Bolanos now claims he took the vehicle at issue with the owner's consent.

The People concede. We accept the concession.

Here, Bolanos took the vehicle with the owner's consent, albeit in a fraudulent manner. But, " ' "unless there is statutory language to the contrary, whenever lack of consent is a necessary element of a crime, the fact that consent is obtained through misrepresentation will not supply the essential element of nonconsent." ' " (*People v. Stuedemann* (2007) 156 Cal.App.4th 1, 7; *People v. Donell* (1973) 32 Cal.App.3d 613, 617 [taking a vehicle with " 'fraudulently induced consent is consent nonetheless' "].)

Because Bolanos had the owner's consent, the conviction for taking a vehicle without the owner's consent is insufficiently proven and cannot stand. He is entitled to an acquittal on Count 8. (See *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1129-1130 [double jeopardy clauses bar retrial if reversal is based on insufficient evidence].)

**VI. The Grand Theft Automobile Conviction Is Affirmed**

In Count 9, the jury found Bolanos guilty of "grand theft auto," a violation of section 484/487(d)(1) …." Bolanos claims "the conviction must be reversed" because it was "based on the theory of larceny, which requires a showing that the property was

taken without the owner's consent." He adds that, "[a]lthough the evidence might have supported a finding of theft by false pretenses, the jury was not instructed on that theory" and a "conviction cannot be upheld based on a theory on which the jury was not instructed."

The People acknowledge "the jury was indeed instructed on the wrong theory of theft." They "disagree that any remedy is called for."

We find the court erred in its jury instructions. However, for the following reasons, the error is not prejudicial.

## A. Additional Background

Relative to Count 9, the court instructed the jury as follows:

> "The defendant is charged in Count 9 with grand theft.
>
> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant took possession of property owned by someone else;
>
> 2. The defendant took the property without the owner's consent;
>
> 3. When the defendant took the property he intended to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property;
>
> AND
>
> 4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief." (See CALCRIM No. 1800.)

The court did not instruct the jury with any other theft theory, including theft by false pretenses. (See CALCRIM No. 1804.)

16.

**B. Analysis**

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824 (*Merritt*).) Failure to do so is "very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee." (*Ibid.*)

" 'Where the effect of the omission can be "quantitatively assessed" in the context of the entire record (and does not otherwise qualify as structural error), the failure to instruct on one or more elements is mere " 'trial error' " and thus amenable to harmless error review." (*Merritt, supra,* 2 Cal.5th at p. 828.) "Certainly, the more elements that are omitted, the less likely it is that the error is harmless, but so long as the error does not vitiate *all* of the jury's findings, it is amenable to harmless error analysis." (*Id.* at p. 829.) "An instructional error involving multiple elements, like an error involving a single element, will be deemed harmless only in unusual circumstances, such as where each element was undisputed, the defense was not prevented from contesting any of the omitted elements, and overwhelming evidence supports the omitted element." (*People v. Mil* (2012) 53 Cal.4th 400, 414.)

Not all of the jury's findings are vitiated in this case.[12] There was little doubt Bolanos committed the theft—he conceded the crime and testified to its commission.[13]

---

[12] For example, the jury *did* find Bolanos took another person's property. Such a finding is the baseline for all theft.

[13] Bolanos testified he purchased the car with "fake money." After his testimony but before closing arguments, defense counsel informed the court, "I have had a chance to talk to Mr. Bolanos about this, and we believe it to be strategically in our best interest … to concede" Counts 8 and 9.

In closing argument, defense counsel stated, "Regarding … charges number 8 and 9, those are regarding the vehicle theft. My client admitted that, yes, he took the car. … [T]he evidence is abundantly clear that it's beyond a reasonable doubt that he did that. And that's the one for number 8 and 9, regarding the car theft, that's an easy one to go back – as a jury, the first thing you should probably, after you elect a foreperson is circle guilty on those two charges."

17.

" 'One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element.' " (*Merritt, supra,* 2 Cal.5th at p. 831.)  Such is the case here— Bolanos did not contest the crime and instead confessed to it in open court.

The remaining, omitted[14] theft-by-false-pretense elements were " 'uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error[.  T]he erroneous instruction is properly found to be harmless.' " (*Merritt, supra,* 2 Cal.5th at p. 832.)  We will affirm the Count 9 grand theft auto conviction but in doing so acknowledge "appellate factfinding is permitted to cure a failure to instruct on one or two elements, [but] at some point the severity of the error must tip the balance the other way." (*Id.* at p. 835 (conc. opn. of Liu, J.).)  Based on the record in this case, we do not believe the balance has tipped.

## VII. The Trial Court Should Stay the Sentences On Counts 6 and 7

In Counts 5, 6, and 7, the jury convicted Bolanos of forcible oral copulation, false imprisonment, and criminal threats for the crimes committed against victim two.  The court sentenced Bolanos to serve an indeterminate term on Count 5,[15] and an additional three years, eight months on Counts 6 and 7.

Bolanos contends "section 654 requires stay of two of the three sentences in counts 5, 6[,] and 7."  The People suggest "the sentences on Counts 6 and 7 must be stayed."

We agree with the People.  On remand, the court must stay the sentence on Counts 6 and 7.[16]

---

[14] See CALCRIM No. 1804.

[15] See **II.**, ante.

[16] Bolanos correctly notes section 654 now allows the court to stay the sentence on any count, including the count carrying the longest sentence.  But he also correctly notes section 667.61, subdivision (h) contains an exception to this rule.  Because we have

## <u>DISPOSITION</u>[17]

The judgment on Count 8 is reversed. The terms imposed on Counts 4, 5, 6, and 7 are vacated. The trial court is directed to enter judgment of acquittal on Count 8, and pronounce judgment on Counts 4, 5, 6, and 7 consistent with this opinion. The judgment is otherwise affirmed.


                                                       SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


FRANSON, J.

---

found the court must also impose a One Strike sentence on Count 5 (see **II.**, *ante*), the court must impose that sentence and stay sentence on Counts 6 and 7. (See *Caparaz, supra,* 80 Cal.App.5th at pp. 689-690.) For this reason, we note the recent amendment to section 654 has no application to this case. (See, generally, *People v. Mani* (2022) 74 Cal.App.5th 343, 351.)

[17] We note the trial court's oral pronouncement of judgment included a stay on Count 9. The abstract of judgment does not reflect the stay. On remand, the court must ensure the abstract of judgment reflects the court's oral pronouncement.